IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| KENNETH TREKELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-00662-DGK |
| | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO STRIKE FRED SEMKE AS AN EXPERT WITNESS AND TO EXCLUDE HIS OPINIONS AND TESTIMONY**

COMES NOW Plaintiff Kenneth Trekell, through undersigned counsel, and hereby files his Motion to Strike Fred Semke as an Expert Witness and to Exclude His Opinions and Testimony. In support of this response, Plaintiff states as follows:

**I. Statement of Facts**

Plaintiff Kenneth Trekell was injured on February 18, 2018, when a tractor-trailer bearing "Target" retail logos failed to yield and pulled in front of traffic at the intersection of 27th Street and Southwest Trafficway in Kansas City, Missouri. Plaintiff was thrown from his motorcycle after colliding with the vehicle in front of him, and the Target tractor-trailer ran over his foot and ankle. The tractor-trailer left the scene. Plaintiff and his fiancé, who was riding a motorcycle behind him, both identified the tractor-trailer as a "Target" retail tractor-trailer. While Defendant Target Corporation maintains it did not have a trailer in the vicinity of the incident, both Plaintiff and his wife, Kelly, along with two independent witnesses at the scene identified the tractor-trailer as a "Target" retail tractor-trailer. Target's corporate representative testified that Target tractor-trailers would be coming from only Iowa and Topeka into the

1

Kansas City area. She testified that trucks from Iowa were not at the scene of the accident, per GPS data *provided by Target's carriers*, and all Target tractor-trailers initiating trips from Topeka would not be on the road in the Kansas City area after 6:30 a.m. on any given day. Plaintiff produced four witnesses who, in a short period of time, sighted and/or photographed Target tractor-trailers during various times of the day. Defendant has disclosed its intent to offer the expert testimony of Fred Semke, who seeks to testify about the perception reaction time of Plaintiff when faced with the presence of the tractor and to introduce a simulation that purports to recreate the circumstances of the collision. Additionally, Mr. Semke intends to offer testimony that a Target retail tractor-trailer was not at the scene of the accident, including opinions that seem to indicate he is an expert in witness credibility and psychology.

Mr. Semke's reconstruction of the collision is based on speculation of the parties involved in the event based upon their perceptions that are not founded in fact or scientific information. Mr. Semke has merely arbitrarily set vehicles' positions and speeds in a spreadsheet, relying on a selective reading of eyewitness accounts of the collision and often relying on unsupported assumptions that are contradicted by the witness statements, and has created a model that illustrates his interpretation of the collision. Rather than admitting that this model is merely a demonstrative exhibit based on his own version of events, Mr. Semke repeatedly sought during his deposition to assign that model a scientific objectivity that is nowhere present in the ̶methodology he followed in setting vehicle positions and speeds not based on the testimony, but based on a selective reading of eyewitness accounts and a verification process that discarded these accounts when they conflicted with the result he had predetermined. This kind of self-serving, misleading testimony has no place in a Missouri court of law and Mr. Semke's simulation, as well as his testimony, should be excluded from trial in this matter. He has not reviewed all witness testimony and he has not contacted, interviewed or

2

otherwise explored or investigated information and testimony relevant to his conclusions. His approach completely misses science and falls squarely into speculation and conjecture and areas where he is not qualified to render opinions.

Finally, beyond creating a model of the collision with little to no connection to the realities of the collision, as testified to by the witnesses, Mr. Semke repeatedly offered expert testimony on the reliability of witnesses' recollections and identification of the Target retail trailer at the scene. He has not, however, established any expertise in evaluating witness reliability or psychological recall.

### II. Mr. Semke's Relevant Testimony

1. Mr. Semke is a mechanical engineer. (Semke 5, 18-20)
2. Mr. Semke's professional affiliations are nothing more than applications and membership fees, although his website boasts he has "achieved the elite status in the insurance industry with its 2016 designation as one of Best's recommended insurance expert service providers." He advertises with the insurance industry and presents to insurance companies. He is involved with the Missouri Organization of Defense Lawyers and attends their conferences. His wife is his business partner and is actively involved in the Blue Goose insurance organization and has served as president. (Semke 12, 9-14; 13, 11-25; 22, 2-23 18, 2-10; 20-6-25, 21, 1-19)
3. Mr. Semke has no certifications in accident reconstruction and has not taught at any schools or universities. He has never worked in accident reconstruction for the law enforcement field and holds no licenses in accident reconstruction. (Semke 6, 2-8; 7, 4-7, 18-23)
4. He has spent about 80 hours on the case and has billed about $24,000.00, and at least one court has formally found him to be a venal witness. (Semke 29, 3-9, 15-21; 80, 12-25)
5. His various presentations listed on his CV are presentations given to insurance companies.

(Semke 6, 9-16)

6. His training in Human Factors consists of a course taught by Jeff Muttart, and he has no degree or designations in Human Factors. (Semke 9, 5-9; 17-21)

7. Jeff Muttart teaches about a spreadsheet to put in information that spits out perception and response times. Mr. Semke took a class and used the spreadsheet in this case. (Semke 10, 3-18; 11, 10-12; 11, 10-25, 12, 1-8)

8. Mr. Semke's expertise in motorcycles consists of growing up riding them and some on-the-job training. He does not own a motorcycle and rode one only in the last five years, but can't remember when. He doesn't know if he has seen the same make and model of motorcycle involved in this case. (Semke 23, 18-24; 24, 5-8, 9-10; 24, 11-15)

9. Mr. Semke did not review the deposition of Connor Donaldson; did not review the deposition of Cory Hammond; did not review the fire department records; has not seen the 911 records; hasn't contacted the witnesses; did not review the deposition of the corporate representative; and did not even ask for all depositions.

10. Mr. Semke has never driven a tractor-trailer professionally, although he holds a CDL. He has only 50-100 hours behind the wheel of a tractor-trailer in his lifetime and has never driven the Target Retail route in the Kansas City area. Yet, Mr. Semke bases some of his opinions on being a professional truck driver. (Semke 34, 14-25; 35, 1-6; 36, 6-25; 37, 10-12, 21-25; 47, 23-25; 48, 1-23; 50, 17-25)

11. Mr. Semke did not do any analysis of the damage to the vehicles or motorcycle involved. (Semke 84, 1-6)

12. Mr. Semke believes he is an expert on Target GPS tracking systems, although he is unsure what systems were used and where the information he reviewed came from. He has no training on the GPS tracking systems. He did not call the Orbcom to discuss the GPS or call

4

any of the GPS providers, although he has done that in other cases where he concluded the GPS information was *inaccurate*. (Semke 41, 5-25; 42, 1-8, 11-25; 43, 1-16; 51, 4-9; 86, 4-11, 19-22; 87, 7-19)

13. Mr. Semke believes he is an expert in the GPS data and tracking systems even though he can't identify what systems were being used on some of the trucks. (Semke 41, 5-22; 42, 11-13)

14. Mr. Semke agrees GPS is not 100% accurate and it is possible to disengage the tracking system, but didn't do any independent research regarding disengagement. (Semke 43, 17-20; 44, 8-14)

15. Mr. Semke bases his opinions on speed, timing and distances from the depositions he reviewed and his conclusions are based upon information taken from the depositions. (Semke 53; 78, 15-22)

16. Mr. Semke's opinions are based upon the description of the events by witnesses. Yet, Mr. Semke agrees that people are not real good at time and distance, and research shows time and distance testimony is not reliable. (Semke 51, 24-25; 52, 1-3; 60, 3-17; 61, 1-25; 64, 5-25; 65, 1-7)

17. He is unsure whether the semi tractor-trailer was stopped or moving when Kenn Trekell first saw it. His opinions are based upon the drivers' and witnesses' experience, but he did no investigation into their experience, and he has no knowledge of how long the truck was. (Semke 52, 4-10; 58, 9-25; 59, 23-25; 60, 1-2)

### III. Mr. Semke's Testimony is Improper under Section 490.065, RSMo., Irrelevant and Unduly Prejudicial.

Under Missouri law, the admission of expert witness testimony is governed by Section

5

490.065, RSMo. Before a witness can offer expert testimony, he or she must first qualify as an expert with ―knowledge, skill, experience, training or education. § 490.065.1 RSMo. An expert's testimony is only admissible if the scientific, technical or other specialized knowledge proffered "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id*. "The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type as discussed in detail in Section IV below.

Opinions reasonably relied upon by experts in the field in forming opinions or inferences upon the subject must be otherwise reasonably reliable." Section 490.065.3, RSMo.

### A. Mr. Semke's Testimony Will Not Assist the Jury

Trial courts have broad discretion to exclude any testimony, and a court's decision to exclude expert testimony seldom constitutes reversible error. *Inman v. Bi-State Dev. Agency.*, 849 S.W.2d 681, 683 (Mo. Ct. App. E.D. 1993); *Huelster v. St. Anthony's Med. Ctr.*, 755 S.W.2d 16, 17 (Mo. Ct. App. E.D. 1988). It has been long established in Missouri that expert testimony is necessary only "where the subject matter of an inquiry is so far removed from the realm of common experience that the ordinary jury, even when the facts are fully placed before them, cannot fairly be expected to draw a correct inference therefrom." *Homan v. Mo. Pac. R.R. Co.*, 64 S.W.2d 617, 625 (Mo. 1933) (en banc), *cert. denied*, 291 U.S. 683 (1934) (citations omitted). Where a jury has the evidence before it to determine an issue of everyday experience, it is competent to do so without any expert testimony. *Inman*, 849 S.W.2d at 683. Issues of everyday experience include traffic matters, because ordinary jurors have sufficient experience with traffic matters from which to draw conclusions about facts and testimony in traffic collision cases. Indeed, courts have long held that ordinary jurors are competent to reach conclusions about the

6

positions of vehicles in traffic collisions when presented with direct evidence. *Homan*, 64 S.W.2d at 625 (trial court did not err in excluding expert testimony about the positions of a bus and a flat car at the time of collision); *see also Housman v. Fiddyment*, 421 S.W.2d 284, 289-92 (Mo. 1967) (en banc) (trial court erred in admitting expert testimony about the point of impact of vehicles involved in an collision, and citing numerous cases in support).

In this case, Mr. Semke's testimony will invade the province of the jury because it adds nothing to the conclusions that the jury is capable of reaching on its own, based on the other evidence to be presented. "An expert witness, in a manner, discharges the functions of a juror; and his evidence should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved." *Housman*, 421 S.W. 2d at 289 (quoting *Benjamin v. Metro. St. Ry. Co.*, 34 S.W. 590, 593 (Mo. 1896)). The jurors, experienced in highway driving, will be fully capable of hearing this evidence and reaching their own conclusions about the manner in which the wreck occurred. *See Housman*, 421 S.W.2d at 292; *Inman*, 849 S.W.2d at 683; *Homan*, 64 S.W.2d at 625 (determining in 1933 that –[t]he development of paved highways and the increasingly common use of automobiles, in recent years, has made the average citizen familiar with them and conditions arising from their use.). Expert opinion testimony in this case about the possible positions of the vehicles or the speeds at which they might have been traveling will not assist the jury in any way. It is overly speculative, cumulative, and prejudicial, and Mr. Semke's testimony should therefore be excluded.

### B. Mr. Semke's Opinion Rests on False and Selective Reading of the Testimony

An expert "may not, under the guise of giving opinions, provide testimony consisting of incompetent evidence." *Leake v. Burlington N. R.R. Co.*, 892 S.W.2d 359, 364 (Mo. Ct. App.

7

E.D. 1995). Moreover, when an expert's testimony is based on assumptions that are contradicted by the evidence, such testimony is prejudicial and inadmissible. *Greer v. Continental Gaming Co.*, 5 S.W.3d 559, 566-67 (Mo. Ct. App. W.D. 1999). In this case, Mr. Semke based his opinions about the speed and position of the vehicles involved in the wreck on the police report, his interpretation of the testimony of some, but not all, of the eye witnesses to the collision, and his own measurements of the wreck scene taken over a year after the collision took place.

Mr. Semke admitted in his deposition that he did not speak to any of the witnesses or people providing the GPS data he relied upon in forming his opinions. He relies on photos taken at irrelevant times under seasonal circumstances that are different than those that would have been relevant at the time of the collision.

However, Mr. Semke has no problem assuming that all of the facts, estimates, locations, speeds, times, distances, and recollections from the witnesses are specifically correct and accurate when they support his opinions. This is true even though he acknowledges witness reliability is problematic.

### C. Mr. Semke's Proposed Testimony on Perception Reaction Time is Derivative and Unreliable

Mr. Semke's opinion on perception-reaction time is not "otherwise reasonably reliable." Mo. Rev. Stat. § 490.065.3. He did not perform his own calculations to arrive at his opinion concerning the Defendant's perception-reaction time. Mr. Semke admits that he relied on a program called Interactive Driver Response Research (IDRR), which was created by Dr. Jeff Muttart, to calculate the reaction time that he testifies to). This program is nothing more than an Excel spreadsheet that Mr. Semke received when he took Dr. Muttart's class some years ago. Mr. Semke simply input numbers that he derived from his interpretation of the testimony in this case,

8

and the Excel spreadsheet, using the equation that Dr. Muttart developed, provides a response time calculation.) Mr. Semke did not develop the equation himself, he has not independently verified whether the equation is correct, and he did not test his answer or attempt to independently verify the conclusions he reached. In fact, it is unclear whether Mr. Semke would even know how to calculate an individual's perception-response time without having Dr. Muttart's Excel spreadsheet to rely on. Anyone could use this spreadsheet to calculate a driver's or passenger's response and perception times, and what he did is fairly straight forward and not very complicated.

Since Mr. Semke did not use his own expertise in reaching the conclusions to which he will testify regarding the Defendant's perception-response time, and he did not independently verify the results of his work, he is inadmissibly parroting the conclusion that Dr. Muttart, the creator of the Excel spreadsheet, might have reached in this case. "[I]f the testifying expert merely acts as a conduit for another non-testifying expert's opinion, the 'expert opinion' is hearsay and is inadmissible." *State ex rel. Missouri Highway and Transp. Com'n v. Modern Tractor & Supply Co.*, 839 S.W.2d 642, 655 (Mo. Ct. App. S.D. 1992) (citation omitted). For these reasons, Mr. Semke's opinion testimony on perception-reaction time should be excluded.

### D. Mr. Semke is Not Relying on the Type of Facts Generally Relied upon by Accident Reconstructionists and Is Instead Relying on Hearsay and Speculation

"The facts or data in a particular case upon which an expert bases an opinion or inference…must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable." Section 490.065.3, RSMo. An expert's opinion is inadmissible unless it meets both prongs of the two-step approach required by the statute. First, the facts relied upon by the expert must be reasonably relied upon

9

by other experts in the field. Second, the facts must be otherwise reliable. *See Goddard v. States*, 144 S.W.3d 848, 854 (Mo. App. S.D. 2004). Though deference is shown to an expert's assessment of the facts or data reasonably relied upon in their field, the opinion must still be "founded on substantial information, not mere conjecture or speculation…." *Doe v. McFarlane*, 207 S.W.3d 52, 62 (Mo. App. E.D. 2006).

Mr. Semke, while holding himself out in this case as an expert in the field of accident reconstruction, nevertheless relies overwhelmingly in constructing his simulation on evidence not ordinarily relied upon by accident reconstructionists as a sole source of fact. Collision "[r]econstruction testimony, as it is generally understood, seeks to recreate the accident… who hit whom, where was the impact and how fast the parties were going, a process that requires the study of physical evidence." *Stricklin v. Chapman*, 197 Ill.App.3d 385, 389-90 (1990) (reversing judgment and remanding where law enforcement officer testified as collision reconstructionist and there "simply was insufficient physical evidence present to provide the basic data needed to reconstruct the occurrence"), citing *Finfrock v. Eaton Asphalt Co.*, 41 Ill.App.3d 1020, 1023, 355 N.E.2d 214, 217 (1976)(emphasis added). *See also State v. Bybee*, 254 S.W.3d 115, 118 (Mo. App. W.D. 2008) (police officer's accident reconstruction report inadmissible as hearsay because it was based solely on witness statements); *Edgell v. Leighty*, 825 S.W.2d 325, 328-29 (Mo.App.1992) (police officer, called as an expert to reconstruct the collision, was not allowed To "express an opinion that plaintiff made an improper turn when that opinion was based upon the hearsay statements of witnesses").

In *State v. Bybee*, the Western District Court of Appeals reversed the trial court's judgments, reasoning that:

> Since it was based solely upon statements made by witnesses, Sergeant Brown's repeated reference to his conclusion that Appellant was the driver within his report was improper. He simply made a credibility determination and accepted it

10

as fact, and his expertise in collision reconstruction did not make him any more
competent to judge the credibility of the witnesses and reach that conclusion
than the trier of fact.

*Bybee*, 254 S.W.3d at 118. *See also Graves v. Atchison–Holt Elec. Co-op.,* 886 S.W.2d 1, 7 (Mo.App. W.D.1994) ("[A]n expert who consults and merely summarizes the content of a hearsay source without applying his own expertise is merely a hearsay witness").

Here, Mr. Semke's opinion with respect to the collision simulation is based entirely on hearsay, consisting of eyewitness statements and a hearsay diagram made by an officer present at the scene. This type of evidence, standing alone, is not the type of evidence used by an accident reconstructionist in analyzing a collision—there must be sufficient first-hand physical evidence, such as scene and vehicle photographs, for the reconstructionist to draw any reliable expert conclusion. Here, without even contacting the officer who inspected the scene, Mr. Semke has simply made a credibility determination and accepted it as fact lay witness testimony, and his expertise in collision reconstruction did not make him any more competent to judge the credibility of the witnesses and reach that conclusion than the trier of fact. *Bybee*, 254 S.W.3d at 118. His collision opinions and testimony purporting to recreate the collision at issue in this case should be excluded for what it is: inadmissible hearsay and pseudoscience.

### IV. Mr. Semke's Testimony, in Particular, His Accident Simulations, are Irrelevant and Unduly Prejudicial

"[T]he trial court 'enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal.'" *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011) (quoting *State v. Mayes*, 63 S.W.3d 615, 629 (Mo. banc 2001)). "Evidence must be both logically and legally relevant to be admissible." *Crow v. Crawford & Co.*, 259 S.W.3d 104, 122 (Mo.App. E.D.2008). "Logically relevant evidence makes a fact of consequence to the outcome of the case more or less probable,

11

or corroborates other relevant evidence." *Moon v. Hy–Vee, Inc.*, 351 S.W.3d 279, 285 (Mo.App. W.D.2011). Legal relevance requires balancing the probative value of the evidence versus its prejudicial effect on the jury. *Eckerd*, 289 S.W.3d at 743. "A court may exclude evidence that may have a prejudicial effect, even though the evidence is logically relevant, when the risk of unfair prejudice outweighs the probative value." *Howard v. City of Kansas City*, 332 S.W.3d 772, 786 (Mo. banc 2011). The balancing of the legal relevance of a piece of evidence likewise requires the trial court to "weigh the probative value, or usefulness, of the evidence against its costs, specifically the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence." *Kroeger– Eberhart v. Eberhart*, 254 S.W.3d 38, 43 (Mo.App. E.D.2007)). If the cost outweighs the usefulness, the evidence is not legally relevant and should be excluded. *Adkins v. Hontz*, 337 S.W.3d 711, 720 (Mo.App. W.D.2011).

Mr. Semke's testimony, in particular his collision simulation, fails both components of the relevance test. Presentation to the jury of an outlier explanation of the collision inconsistent with, and unsupported by, the actual eyewitness testimony would be presentation of speculative, irrelevant conjecture. Visual demonstrations, moreover, have a powerful persuasive power that would tend to cement this false, speculative testimony in jurors' minds in a powerfully misleading way. Mr. Semke's self-serving cherry-picking of the testimony is unworthy of such a prominent place in the juror's minds and his simulation should be excluded.

### V. Mr. Semke's Opinions on Human Perception and Witness Reliability Are Outside His Area of Expertise and an Improper Subject of Testimony.

During his deposition, Mr. Semke opined that "[t]ime estimates by witnesses are – generally in my experience are not reliable." He further expounded that "I've read, obviously, witnesses' testimony over the years, and time and distance is something that's not accurately

12

remembered…. I've seen it change from statements to depos before, and sometimes there's depo 1 and depo 2, and it's -- it's just not very reliable."

Mr. Semke is not an expert in the field of witness reliability. His testimony will not help the jurors, who can draw on their own experiences and do not need his assistance. Such testimony would be misleading and unduly prejudicial, as it would allow Mr. Semke to add the weight of his expert credentials to a piece of irrelevant lay testimony. Mr. Semke should be precluded from offering his own conclusions on witness reliability at trial in this matter. Further, Mr. Semke on one hand finds witness testimony and reliability inaccurate when it fits the opinions he wishes to express regarding the identity of the Target retail trailer, but at other times he relies upon the witness testimony to support his conclusions and opinions when it fits his agenda.  Here, he unilaterally determined the four eye-witnesses to the Target retail tractor-trailer were unreliable based upon hearsay evidence provided by third party vendors, not by Target directly. (the GPS data supplied by Defendant after requests made to its vendors and the vendors sending their selective information)  Yet those very same witnesses he relies upon in "scientifically" basing his opinions on time, distance, speed and position.

**VI. Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Strike Fred Semke as an Expert Witness and to Exclude his Opinions and Testimony, and for such other relief as this Court deems appropriate.

Respectfully submitted,

EDELMAN & THOMPSON, L.L.C.

_____/s/ Leah M. Mason_____
Leah M. Mason          MO Bar # 40942
3100 Broadway, Suite 1400
Kansas City, Missouri 64111
(816) 561-3400
(816) 561-1664 (Fax)
lmason@etkclaw.com - e-mail

ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

A copy of the above and foregoing was mailed via the U.S. mail, prepaid postage, this 16th day of March, 2020, to:

Theresa A. Otto
John F. Baty
BATY HOLM NUMRICH & OTTO PC
4600 Madison Ave., Suite 210
Kansas City, MO 64112-3019

ATTORNEYS FOR DEFENDANT

_____/s/ Leah M. Mason_____
Attorney for Plaintiff

### CERTIFICATION UNDER RULE 55.03(A)

Pursuant to Rule 55.03(a), the undersigned certifies that she signed an original of this pleading and that an original of this pleading shall be maintained for a period of not less than the maximum allowable time to complete the appellate process.

_____/s/ Leah M. Mason_____
Attorney for Plaintiff

14