# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| KENNETH TREKELL | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 4:18-CV-00662-DGK |
| | ) |
| TARGET CORPORATION, | ) |
| Defendant. | ) |

## ORDER DENYING SUMMARY JUDGMENT

This personal injury case arises from a motorcycle accident. Plaintiff Kenneth Trekell alleges a tractor-truck pulling a Target branded trailer caused the accident that resulted in his foot being fractured. The tractor-truck and trailer that allegedly caused the accident drove away without stopping, and the driver of the tractor-truck is unknown. Plaintiff argues Defendant Target Corporation is responsible. Target denies any liability.

Now before the Court is Defendant's Motion for Summary Judgment (Doc. 74). Finding that Defendant has failed to create a record showing it is entitled to summary judgment as a matter of law, the motion is DENIED.

**Standard**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court makes this determination by viewing the facts in the light most favorable to

the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive summary judgment, the nonmoving party must "substantiate [her] allegation with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations and citations omitted).

## Undisputed Material Facts

For purposes of resolving the pending summary judgment motion, the Court finds the undisputed material facts to be as follows.[1]

Plaintiff Kenneth Trekell was injured in a vehicular accident at or near the intersection of 27th Street and Southwest Trafficway in Kansas City, Missouri, at approximately 4:12 p.m. on February 18, 2018. Plaintiff was riding a motorcycle when a tractor-trailer turned onto Southwest Trafficway in front of the car that was in front of Plaintiff' motorcycle, forcing the car to stop suddenly. This, in turn, caused Plaintiff to stop suddenly, launching him off his motorcycle, over the car, and into the tractor-trailer's path. The tractor-trailer then drove over Plaintiff's foot.

The tractor-trailer drove away from the accident without stopping, and the driver has not been identified. No witness to the accident identified any Target logo on the truck-tractor. Several witnesses, however, including one familiar with Target's branding, saw a Target logo on the side of the trailer. Target does not lease its trailers to other entities.

---

[1] The Court has limited the facts to those that are undisputed and material to the pending summary judgment motion. The Court has excluded legal conclusions, argument presented as fact, proposed facts that are not properly supported by admissible evidence, and proposed facts that are properly controverted. The Court has included inferences from undisputed material facts. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

Target did not own any truck-tractors located in, or traveling through, the Kansas City, Missouri, metropolitan area on February 18, 2018, nor did Target employ any truck drivers that were located in, or travelling through, the Kansas City, Missouri metropolitan area that day. The drivers of the truck-tractors that pull Target trailers are not Target employees.

The existing record does not establish whether Target was a certified carrier[2] on or before February 18, 2018.[3] The record is also silent as to whether Target placed on the trailer any signs identifying Target as a certified carrier.[4]

Target had contracted with three certified carriers, Dart Transit Company, Hogan Dedicated Services, LLC, and Ruan Transportation Corporation (collectively "the Carriers"), to make deliveries to its stores in the Kansas City, Missouri metropolitan area in February 2018. Each of the Carriers had contracts with Target on the day of the accident, and they have been carriers for Target for at least eight years.

The Amended Complaint (Doc. 38), alleges that at the time of the accident, the driver of the truck-tractor was driving in the course and scope of his employment with Target or at Target's direction and control. ¶ 9. It contends that under Missouri Law, Target is vicariously liable for the driver's actions. *Id*. at ¶ 12. It alleges Target is responsible for the driver's negligence based on either a master/servant relationship, the doctrine of respondeat superior, or as a joint-venturer. *Id*. ¶ 10.

---

[2] The parties' briefing does not explain what they mean by "certified carrier."

[3] The portion of the record cited by Target does not support its proposed fact: "Target was not a certified carrier on or before February 18, 2018." Nor can the Court cannot find anything else in the record supporting this proposed fact.

[4] The portion of the record cited by Target does not support its proposed fact: "Target did not place signs of any kind on any trailer stating that Target was a certified carrier or identifying Target as a certified carrier." Nor can the Court cannot find anything else in the record supporting the proposed fact.

**Facts relevant to determining Target's right to control the Carriers.**

Included in Plaintiff's proposed additional uncontroverted facts are numerous proposed facts concerning the degree to which Target had a right to control the Carrier's actions on the day of the accident. Target objects to these proposed facts on the grounds that they are "irrelevant and not material to the legal basis on which Target seeks summary judgment in that it is wholly immaterial to the identity of the carrier associated with the alleged tractor." Reply at 9-15 (Doc. 77). The Court holds that insofar as these facts inform the degree to which Target had a right to control the Carrier's actions, they are relevant to determining whether Target could have respondeat superior liability under Missouri law. Thus, Target's objections are denied, and the following facts are undisputed for purposes of summary judgment.

Target gives the Carriers a weekly schedule of routes. Target prepares and sets the time and locations for these routes. Target expects the Carriers to be on time 99 percent of the time. It monitors their performance, and when they are late, the Carriers are "dinged" for performance.

Target's trailers are required to comply with regulations of the United States Department of Transportation Federal Motor Carrier Safety Administration. Target tractor-trailers have Target license plates on them. Target is not aware of any other businesses, companies, or organizations that use trailers with the Target logo on them. Target trailers carry only regulated freight.

Target's operating procedures are given to the Carriers. Target and the Carriers are "transportation partners." If a carrier is in an accident, major or minor, it is required to be reported to Target.

Target trains the Carriers in the use of Target's portal for information and tools on how to ship goods for Target. Target provides delivery procedures and responsibilities for the carriers. The Carriers' employees sit in the Target Distribution Center and the carriers have an on-site manager at the Target Distribution Center. Target holds bi-weekly meetings with Target market leaders[5] and the Carriers' management.

Target's agreements with the Carriers provide that it can take corrective action against a Carrier if it is not meeting expectations. Target allows the Carriers to subcontract out but can prohibit or limit a carrier's ability to perform services through a substitute or a subcontractor.

Target requires the Carriers to enroll as a transportation provider on the website "Target's Partners Online," and Target trains the Carriers on the website's use. Target can audit, review and copy the Carriers' records at all reasonable times. Target also pays for the tolls incurred by the Carriers during transportation.

Target has some dedicated carriers that are specific to Target deliveries and loads. There are also times when Target trailers are stored at the Carriers' locations.

Target has shipping visibility requirements and an electronic data interchange with data that is required of the Carriers and business rules providing notification to Target that the Carriers' drivers have reached the pickup locations.

Target's contracts with the Carriers require them to: perform repairs on Target trailers upon request, comply with Target's requests to reconsign or divert shipments enroute, appropriately secure goods in transit, and not leave trailers unattended. They dictate submission of invoices and times, and provide that Target and the Carriers will share in losses.

Target provides a claims process for loss or damage as set forth in the contracts, which dictate that the Carriers investigate claims. At Target's request, the Carriers participate in

---

[5] The briefing does not explain what "Target market leaders" are.

periodic business reviews scheduled by Target and, at Target's direction, to be held at a Target location.

## Discussion

Target moves for summary judgment on all three of Plaintiff's theories.

**I.   The existing record does not establish whether Target was a certified carrier, and thus the Court cannot grant summary judgment to Defendant on "logo liability."**

"'Logo liability' is a species of vicarious liability by which a carrier is liable as a matter of law for injuries caused by a leased truck's negligence, where that truck bears the carrier's ICC logo." *Reliance Nat. Ins. Co. v Royal Indem. Co.*, No. 99 Civ. 1092 NRB, 2001 WL 984737, at *7 (S.D.N.Y. Aug. 24, 2001). Logo liability applies only against a certified carrier, and only where the certified carrier's logo or placard is identified on the truck-tractor. *See id.*; *Hearn v. ABF Freight Sys.*, --- S.W.3d ---, 2020 WL 4590171, at *1 (Mo. Ct. App. Aug. 11, 2020) (the "doctrine only applies to carrier-lessees"); *Robertson v. Cameron Mut. Ins. Co.*, 855 S.W.2d 442, 449-50 (Mo. Ct. App. 1993) (recognizing that the carrier's placard or signage had to be attached to the truck-tractor for vicarious liability to attach to the carrier); *Parker v. Midwestern Distribution, Inc.*, 797 S.W.2d 721, 722 (Mo. Ct. App. 1990) (applying logo liability when the carrier's logo was identified on the truck-tractor as well as the trailer). A company's logo found solely on a trailer is not enough to base logo liability against that company. *Cf. Robertson*, 855 S.W.2d at 449-50.

Target argues it cannot be liable under a "logo liability" theory for two reasons: (1) it has never been a certified carrier, and (2) it has never possessed any signs or placards identifying it as a certified carrier, nor has it ever placed signs of any kind on any truck or trailer identifying it as a certified carrier. The existing record, however, does not establish that Target has never been a certified carrier, nor does it establish that it never placed any signs on a truck-tractor

identifying it as a certified carrier. For summary judgment purposes, the record is silent on these facts. Thus, the Court cannot grant Target summary judgment on this claim.

This ruling, however, does not mean Plaintiff's logo liability claim will ultimately be submitted to a jury. The Court will not submit the issue at trial unless there is evidence presented during trial that Target was a certified carrier on the day of the accident and there was a Target sign on the truck-tractor involved in the accident.

## II. Target has not established it is entitled to summary judgment on Plaintiff's claim of respondeat superior.

Next, Target argues it is entitled to summary judgment on Plaintiff's claim of respondeat superior liability because it "is not a carrier nor does it employ any truck drivers and as such, a claim of respondeat superior cannot be supported." Suggestions in Supp. (Doc. 75) at 10. Plaintiff responds that whether Missouri law treats the driver of the truck as a Target employee under the doctrine of respondeat superior is a question for the jury.

The doctrine of respondeat superior holds an employer liable for the torts committed by its employees while they are acting within the scope of employment. *Noah v. Ziehl*, 759 S.W.2d 905 (Mo. App. E.D. 1988). An employer generally is not held vicariously liable, however, for the acts of independent contractors, who are not considered employees for purposes of respondeat superior. *Kaplan v. U.S. Bank, N.A.,* 166 S.W.3d 60, 66 (Mo. App. 2003).

Under Missouri law, whether an individual is an employee or an independent contractor is generally a question of fact. *Huggins v. FedEx Ground Package System, Inc.,* 592 F.3d 853, 857 (8th Cir. 2010). But when the facts are undisputed and "only one reasonable conclusion can be drawn" from those facts, the issue may be decided as a matter of law. *Id.* (reversing district court's determination that under Missouri law defendant FedEx could not be liable under respondeat superior for the actions of a third-party driver it characterized as an independent
7

contractor, holding enough facts suggesting defendant had a right to control the driver so that the jury could find he was an employee for respondeat superior purposes.) The right to control "is the pivotal factor in distinguishing between employees and other types of workers. If the employer has a right to control the means and manner of a person's service—as opposed to controlling only the results of that service—the person is an employee rather than an independent contractor." *Leach v. Board of Police Com'rs of Kansas City,* 118 S.W.3d 646, 649 (Mo. Ct. App. 2003).

"The concept of the 'right to control' is more intricate in Missouri than most other states." *In re FedEx,* 273 F.R.D. 424, 474 (N.D. Ind. 2008) (applying Missouri law). Courts applying Missouri law consider eight factors: "(1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the employer, and (8) the employment contract." *Wells v. Fedex Ground Package System, Inc.*, 979 F. Supp. 2d 1006, 1014 (E.D. Mo. 2013) (citing *In re FedEx*, 273 F.R.D. at 474; *Skidmore v. Haggard,* 341 Mo. 837, 110 S.W.2d 726, 729–30 (1937); *Trinity Lutheran Church v. Lipps,* 68 S.W.3d 552, 559 (Mo. Ct. App. 2001)). No one factor is dispositive; a court considers the facts as a whole. *Id*. (citing *Hamilton v. Palm,* 621 F.3d 816, 818–19 (8th Cir. 2010) ("Under Missouri law, the critical right-to-control issue is affected by many factors "none of which is in itself controlling."))

Unfortunately, the Court cannot apply this test on the existing record. While Plaintiff arguably alludes to the eight-factor test (by citing long passages from *Huggins* which mentions that Missouri courts consider the factors set forth in the Restatement (Second) of Agency, which are similar to those in the eight-factor test), and has placed some facts relevant to the issue on the

record, Plaintiff has not applied these facts to the law. For example, Plaintiff observes *Huggins* discussed factors for the jury to consider "including safety and quality procedures, daily documentation, place of work, itineraries, what terminals were used for departure and return, [and] length of time of employment," but Plaintiff does not explain how these factors apply in to this case. Resp. at 16 (Doc. 76). Instead, Plaintiff summarily concludes, "there is an abundance of evidence that would support Plaintiff's claim of respondeat superior as set forth in Plaintiff's additional facts and the language of the contracts themselves." Resp. at 16.

Similarly, Target's brief, instead of identifying the relevant test and applying it to the facts, restates its prior argument that it cannot be liable because (1) it is not a carrier, (2) Plaintiff has not identified a carrier logo on the tractor, and (3) "the identification of the carrier by its logo on the tractor is required to establish vicarious liability for the negligence of the driver." This argument is unavailing because Missouri law concerning respondeat superior does not have special rules that apply in the context of tractor-truck drivers. While Missouri law on logo liability conditions a defendant's liability on the defendant being a carrier and the tractor bearing the carrier's logo, it does not condition a defendant's responsibility under a theory of respondeat superior on it being a carrier and the tractor bearing its logo. Whether a defendant can be liable under a respondeat superior theory turns on the eight-factor test outlined above.

While both parties' briefs are somewhat lacking on this issue, Defendant has the burden of showing that it is entitled to judgment as a matter of law. It has failed to demonstrate that the truck driver could not as a matter of law be its employee for respondeat superior purposes, so its motion is denied with respect to this claim.

### III. Target has not established it is entitled to summary judgment on Plaintiff's joint venture claim.

Finally, Target argues it is entitled to summary judgment on Plaintiff's joint venture claim. Generally speaking, "[a] joint venture is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge." *Barfield v. Sho-Me Power Elec. Coop.*, No. 11-CV-04321-NKL, 2013 WL 12145822, at *2 (W.D. Mo. Apr. 15, 2013) (internal quotation omitted). The elements of a joint venture are: "(1) an express or implied agreement among members of the association; (2) a common purpose to be carried out by the members; (3) a community of pecuniary interest in that purpose; and, (4) each member has an equal voice or an equal right in determining the direction of the enterprise." *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 387 (Mo. Ct. App. 1999). While the existence of a joint venture may be implied or inferred from the acts and conduct of the parties showing that they entered into one, the parties must intend to create a joint venture. *Barfield*, 2013 WL 12145822, at *2.

Particularly relevant to whether Target could be liable in this case under a joint venture claim are the following: "[C]ourts applying Missouri law have been especially hesitant to imply the existence of a joint venture where the parties are corporations." *Id*. at 3 (collecting cases). Further, the "community of pecuniary interest" element "requires that the parties have a right to share in the profits and a duty to share in the losses." *Id*. at 4. Sharing an economic interest is not enough. *Id*. Finally, the requirement that each member has an equal voice or equal right in determining the direction of the enterprise means each member in the joint venture must share equal *control* over the enterprise. *Id*. at 5.

The existing factual record is too undeveloped for the Court to grant Defendant summary judgment on this claim. There are simply insufficient facts here. Thus, this claim survives

summary judgment. That said, at trial the Court will not submit the question of joint venture liability to the jury unless sufficient evidence is presented on each element.

## Conclusion

Defendant Target's Motion for Summary Judgment (Doc. 74) is DENIED.

**IT IS SO ORDERED.**

Date:  September 16, 2020   /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT