# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| KENNETH TREKELL | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 4:18-CV-00662-DGK |
| | ) |
| | ) |
| TARGET CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING IN PART MOTION TO EXCLUDE EXPERT TESTIMONY

This personal injury case arises from a motorcycle accident. Plaintiff Kenneth Trekell alleges a tractor-truck pulling a trailer branded with Defendant Target Corporation's ("Target") logo caused a collision that resulted in his foot being fractured. The tractor-truck and trailer that allegedly caused the accident drove away without stopping, and the driver of the tractor-truck is unknown. Plaintiff argues Target is responsible for his injuries. Target denies liability.

Now before the Court is Plaintiff's Motion to Strike Fred Semke as an Expert Witness and to Exclude His Opinions and Testimony (Doc. 70).[1] Finding some of Semke's opinions are not admissible as expert testimony, the motion is GRANTED IN PART.

### Standard

Where, as here, a federal court is hearing a lawsuit pursuant to its diversity jurisdiction, the admissibility of expert testimony is governed by federal law. *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). Federal Rule of Evidence ("FRE") 702 provides that:

> a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[1] ECF document #67 is Plaintiff's original motion and incorporated brief to exclude expert testimony. ECF document #70 is the same motion and brief revised to cite federal law instead of state law.

>    (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>    (b) the testimony is based on sufficient facts or data;
>
>    (c) the testimony is the product of reliable principles and methods; and
>
>    (d) the expert has reliably applied the principles and methods to the facts of the case.

In other words, the proponent must show that the expert's opinions are relevant, the expert is qualified to offer them, and "the methodology underlying his conclusions is scientifically valid." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006).

The party seeking to introduce the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Doubts are resolved in favor of admissibility. *Marmo,* 457 F.3d at 758.

## Analysis

Defendant's expert witness, Fred Semke ("Semke"), has a master's degree in mechanical engineering and has worked as an accident reconstructionist for over twenty years. Semke offers six opinions in his expert report (Doc. 72-1), each in a correspondingly numbered paragraph.

In the first opinion, Semke opines that GPS data provided to him by Defendant indicates that Defendant did not have any trailers in the vicinity of the accident at the time of the collision. Accident Evaluation at 9. Further, after conducting an internet search for companies with the word "Target" in their name—and notwithstanding the testimony of three eyewitnesses who said the trailer at issue bore Defendant Target's logo—Semke opines it is more likely that the trailer that ran over Plaintiff's foot belonged to another company with "Target" in its name. *Id*.

In opinions two through five, Semke asserts where the various vehicles involved in the accident were positioned after the accident and in the moments leading up to the accident. *Id*. at 9-10. Defendant argues this testimony will help the jury understand how long it takes a vehicle to stop when it is traveling at 35 miles per hour—the speed Plaintiff testified during his deposition that he was traveling before the accident. Defendant also contends Semke's testimony will assist the jury in understanding the field of view of the various drivers involved in the subject accident, and how long it would take a driver to react after observing a stimuli. These opinions are based on Semke's own measurements and inspection of the accident scene, his calculations (including one produced by a computer program called Interactive Driver Response Research ("IDDR") created by Dr. Jeff Muttart), his review of police reports, and his review of testimony from other witnesses.

In his sixth opinion, Semke states that had Plaintiff followed a recommendation in the Missouri Department of Revenue's Motorcycle Operator Manual which encourages motorcyclists to position themselves in driving lanes in such a way as to distance themselves from potential hazards, he would have changed lanes prior to the accident. He then would have avoided injury once the accident occurred. *Id*. at 10.

Finally, although not offered as an opinion in his report, during his deposition Semke opined on the accuracy and reliability of the eyewitnesses' testimony concerning the accident. He stated, "I've read, obviously, witnesses' testimony over the years, and time and distance is something that's not accurately remembered." Semke Depo 64:20 - 23 (Doc. 68). "I've seen it change from statements to depos before, and sometimes there's depo 1 and depo 2, and it's—it's just not very reliable. I think there's research that would show that it's not very reliable." *Id*. 64:25 – 65:1 - 4. Plaintiff is concerned Defendant may elicit these opinions during trial.

Plaintiff seeks to exclude all of Semke's testimony arguing: (1) his testimony will not assist the jury; (2) the jury will not need expert testimony to reach their conclusion about the manner in which the accident occurred; (3) his opinion rests on false and selective reading of the testimony in the record; (4) his testimony on perception reaction time is derivative of other experts' work (specifically, Dr. Muttart's IDDR program, which Plaintiff contends is simply an Excel spreadsheet) and is unreliable; (5) he is not relying on the type of facts generally relied upon by accident reconstructionists, instead relying on hearsay and speculation; (6) his accident simulations are irrelevant and unduly prejudicial; and (7) his opinions on human perception and witness reliability are outside his area of expertise and an improper subject of testimony.

The Court rules as follows.

Semke's first opinion is not admissible because allowing him to testify about GPS data for Target trailers would contravene the Court's Order Granting in Part Motion to Strike (Doc. 60). That order prohibited Defendant from calling any witness "employed by Target," or the "Hogan, Ruan, or Dart" carriers, or "a representative of any entity maintaining or providing GPS devices and GPS data for trucks hauling Target trailers[,] or Target trailers," to testify "about the location of trucks hauling Target trailers at the time of the accident, or GPS data for such trucks and/or trailers" on the day of the accident. Order Granting in Part Mot. to Strike at 11. The Court entered this order as a sanction for Defendant's violating Rule 26 by failing to identify such witnesses until the very last day of discovery. Hence, allowing Semke to testify about GPS tracking data *provided to him by Defendant* would effectively operate as an "end run" around this sanction, which the Court will not permit. Even if Semke's testimony about GPS data was not foreclosed by the sanction's order, the Court would still exclude this testimony because

Defendant has not demonstrated that Semke is qualified to provide expert testimony on GPS data.

The Court also prohibits Semke from testifying about the likelihood that the trailer that ran over Plaintiff's foot belonged to another company with "Target" in its name. Semke's internet search is not a foundation on which to base expert testimony concerning the likelihood that another company's trailer was involved in the collision, particularly since there is testimony from multiple eyewitnesses—including testimony from a witness who has no relationship to either party—that the trailer that ran over Plaintiff's foot bore Defendant Target's distinctive logo. Defendant's contention that Semke's testimony is required because once the jury hears Plaintiff's evidence that the trailer bore Defendant's logo, it will be difficult for the jury to understand how Defendant's trailer was not involved in the accident, is unavailing. The issue here is whether Semke is qualified to give an expert opinion on this subject, and he is not.

Accordingly, Semke's first opinion is excluded in its entirety. Defendant is prohibited from offering: (1) any testimony about what GPS data might show about its trailers' locations on the day of the accident; (2) any opinion based in whole or in part on GPS data; and (3) any opinion about the likelihood that another company with the word "Target" in its name bears responsibility for the accident.

Turning to the opinions offered in paragraphs two through five of Semke's expert report, the Court holds Defendant has demonstrated they are admissible under FRE 702. Defendant has shown these opinions are offered pursuant to Semke's knowledge, skill, experience, training, and education, and they will advance the jury's understanding of the accident. His opinion and testimony appear to be based on reliable principles and methods that are typically used by an expert in the field of accident reconstruction, and Semke reliably applied those principles and

methods to the facts here. Further, his opinion and testimony appear to be based on sufficient facts and data. While Plaintiff has identified what are arguably flaws in his methodology, for example, selectively reading the testimony in the record to support a conclusion that will please Defendant who is paying him approximately $24,000 for his testimony, this argument goes to the weight Semke's testimony should be given, not its admissibility. Accordingly, opinions two through five are admissible.

Opinion six, which essentially opines Plaintiff was not riding his motorcycle safely at the time of the accident, is not admissible. This opinion is not based on Semke's scientific, technical, or specialized knowledge. It is based on Semke's reading a brochure from the Missouri Department of Revenue. This is not a sufficient basis for Semke to offer expert testimony on this subject. Accordingly, opinion six is excluded in its entirety.

Finally, the Court turns to Semke's deposition testimony concerning the reliability of witnesses perception and memory of time and distance. Although it is unclear whether Defendant intends to offer this as an expert opinion at trial, out of an abundance of caution, the Court will address this issue. As a threshold matter, this testimony is inadmissible because it is not in Semke's expert report. Even if it were disclosed in his report pursuant to the Court's scheduling and trial order, however, it would still be inadmissible because Semke's opinions on human perception and witness reliability are outside his area of expertise. Thus, this opinion is excluded.[2]

## Conclusion

For the reasons discussed above, Plaintiff's Motion to Strike Fred Semke as an Expert Witness (Doc. 70) is GRANTED IN PART.

---

[2] Of course, if Plaintiff's counsel questions Semke on the topic of the reliability of witness perception or memory at trial, she may open the door to admission of this testimony.

**IT IS SO ORDERED.**

Date:  November 16, 2020  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT